UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SFD ENTERPRISES,

        Plaintiff,

vs.                                   Case No.10-cv-10769
                                   HON. GEORGE CARAM STEEH

CVS PHARMACY, INC., et al.,

        Defendants.

_____/

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    I.      Introduction

Plaintiff, SFD Enterprises, LLC (SFD), is a Michigan limited liability company that imports products from China which are then marketed and sold to retailers.  Defendant CVS Pharmacy (CVS) is a national pharmacy chain which sells a variety of consumer products at retail.  Defendant Complete Sourcing Solutions, Inc. (CSS) imports a variety of products from China, including electronics, and markets and sells them to retail stores. Defendant Symtek, Inc. (Symtek) was formed in 2005 to serve as house brand for CSS.

SFD brings claims under the  Patent Act, 35 U.S.C. § 1 et seq.,  the Lanham Act, 15 U.S.C. § 1111 et seq. and a claim of promissory estoppel under state law against defendants, who now move for summary judgment on all of SFD's claims.

    II.     Factual Background

From 2005 through late 2008, SFD was involved in the business of importing and

marketing consumer electronics including accessories for portable handheld electronic devices such as, iPod Classic, iPod Nano, iPod Touch, iPhone and Microsoft Zune. SFD developed a product line, consisting of approximately 55 different accessories, such as AC house chargers or DC car chargers for iPods and other similar music devices, which were marketed under the name "Fast Trax." SFD's Fast Trax line was sold nationwide, at retailers such as Kroger, Kerr Drugs, K-Mart, Meijer and 7-Eleven.

On December 29, 2006, Bert Bruseloff, founding member of SFD, filed United States Patent Application No. 29275550 with the United States Patent and Trademark Office (USPTO) seeking a design patent as the inventor of a "Male Electrical Connector." Bruseloff assigned all right, title and interest to SFD. On September 9, 2008, the application was granted and United States Design Patent No. D576,555 ('555 patent) was issued by the USPTO.

In September of 2007, Bruseloff contacted Harold Settler, a manufacturer's representative, to obtain his assistance in marketing SFD's products to new retail clients. Settler arranged for a meeting with Paul Kelly, the general merchandise category manager at CVS. Kelly was responsible for managing several categories of general merchandise, including electronics. Kelly had the ability to make decisions, subject to the approval of upper management.

On November 20, 2007, Bruseloff and Settler met with Kelly at CVS headquarters in Rhode Island. At the meeting, Bruseloff gave a presentation about the Fast Trax product line, and supplied Kelly with samples of each of the products in SFD's Fast Trax Line. Each sample containing an electrical connector with the design that is the subject of the '555 patent, was labeled "patent pending."

Bruseloff claims that Kelly told him that CVS would purchase 50 unit packages of the Fast Trax Line products in order to supply each of its 5,000 retail stores for a total of 250,000 units. Bruseloff further claims that Kelly agreed that CVS would continue to order the Fast Trax Line products on a weekly basis to replenish its stores as needed. Kelly indicated that it would take approximately two months for CVS to officially list SFD as a vendor, but that SFD should immediately take steps to fulfill CVS's orders of SFD's products. Kelly denies making a commitment to purchase any products from the Fast Trax Line during the November 20, 2007 meeting. Settler testified at his deposition that Kelly seemed interested in the Fast Trax Line, but he never made a commitment to purchase any amount of product.

SFD maintains that, in reliance upon Kelly's representations, it began taking measures to fulfill CVS's order of the Fast Trax Line products, such as repackaging existing inventory that had been earmarked for 7-Eleven. On December 20, 2007, Bruseloff sent an email to Settler asking that he receive a memorandum of commitment from CVS. SFD never received a memorandum of commitment from CVS. When a written memorandum of commitment was not forthcoming, Bruselhoff discussed with Settler various proposals that would provide Kelly with more comfort with issuing an order. CVS did not agree to any of Bruselhoff's alternate proposals.

On February 11, 2008, Bruseloff sent Kelly a letter enclosing samples of Fast Trax products and a photograph of a display tray. In this letter, Bruseloff indicated that "our goal is to team up with CVS for 52-week business." See Defs.' Mot. for Summ. J., Ex. 6. On February 12, 2008, Settler wrote to Kelly providing Kelly with alternative proposed price terms in connection with the Fast Trax Line. SFD never received a purchase order from

CVS. In August of 2009, Bruseloff discovered that CVS was selling competing iPod accessories sold by Symtek and CSS instead of the Fast Trax Line of products.

### III. Law & Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

B. Promissory Estoppel Claim

As a threshold matter, defendants argue that SFD's promissory estoppel claim is governed by Rhode Island law because this is where the meeting between the parties occurred. Defendants rely on Chrysler Corp. v. Skyline Industrial Services, Inc., 448 Mich. 113, 528 N.W. 2d 698 (1995) arguing that the Chrysler court declined to abandon the long predominant view in Michigan that *lex loci contractus* determined what state's law applied to a contract dispute, specifically that a contract is to be construed according to the law of the place where the contract is entered into. The decision in Chrysler states much more than defendants suggest. Specifically, the Chrysler court held that:

> Underlying the holdings in [our previous decisions] was the view that resolving conflicts questions requires moving beyond traditional rules. Much as the *lex loci delicti* had proven too inflexible for resolution of tort conflicts, the rigid 'law of the place of contracting' approach has become outmoded in resolving contract conflicts.

Id. at 124. While it is true that the Chrysler court declined to explicitly abandon the old rule or the "law of the place of contracting" for choice of law analysis, the court also indicated that the old rule may prove unworkable under certain situations "which demand a more extensive review of the relative interests of the parties and the interested states." Id. at 125, n. 28. Therefore, this court should be guided by the policy-centered approach set forth in § 188 of the Restatement (Second) of Conflicts of Laws when appropriate. Id. at 124 (Sections "187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities.").

> Under section 188 of the Restatement (Second) of Conflict of Laws requires the court to determine which state has the most significant relationship to the dispute and the parties by examination of the following factors: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) Conflict of Laws § 188(2).

An examination of these factors demonstrates that Michigan law governs this action. The first factor is irrelevant because there was never a formal contract between the parties, and the second factor, place of contracting, is the only factor weighing in favor of applying Rhode Island law. The place of performance was to occur in Michigan, SFD was to ship its products from its warehouse to CVS's distribution centers located throughout the country. The products that were marked for distribution to CVS were, and are still, held in SFD's warehouse in Michigan. Lastly, SFD is a Michigan limited liability company and SFD's only members, Bruselhoff and Salem Kassab, are Michigan residents, and CVS is

a Rhode Island corporation that conducts substantial business in Michigan.

As to SFD's promissory estoppel claim, SFD maintains that this claim is not barred by the statute of frauds under Michigan law as defendants argue. The parties' alleged agreement is governed by Michigan's enactment of the Uniform Commercial Code (UCC). Under § 2-201 of the UCC, "a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." MICH. COMP. LAWS § 440.2201(1).  In Bruseloff's December 20, 2007 email to Settler, he indicates that the initial cost for the first shipment of the Fast Trax products to the 5,000 CVS stores would total $2,812,500.00.  Therefore, the parties' alleged agreement is governed by the statute of frauds.

SFD cannot use promissory estoppel to circumvent the statute of frauds under the facts of this case.  While it is true that the Michigan courts have allowed the use of estoppel to overcome a statute of frauds defense, this use of estoppel is used defensively as an "equitable shield" versus using it offensively as a separate claim for recovery. See Metropolitan Alloys Corp. v. Considar Metal Marketing, Inc., 615 F. Supp. 2d 589, 596-98 (E.D. Mich. 2009).  In the cases cited by SFD, the Michigan courts allowed the "defensive use of the doctrine of equitable estoppel to overcome a statue of frauds defense to a breach of contract claim."  Id. at 597; see, Fairway Machinery Sales Co. v. Continental Motors Corp., 40 Mich. App. 270; 198 N.W. 2d 757 (1972) (allowing the plaintiff to plead estoppel after the defendant raised the statute of frauds as a defense to plaintiff's breach of contract claim); Liberty Mut. Ins. Co. v. Consol. Elec. & Tech. Assoc. Corp., 2007 U.S. Dist. LEXIS 1791, at *7-9 (E.D. Mich. Jan. 10, 2007) (same).

Further, in those cases, the courts relied on the fact that the plaintiffs' theory for recovery based on promissory estoppel rested upon a separate promise, specifically the defendants' promises to reduce the parties' oral agreement to writing. See Metropolitan Alloys Corp., 615 F. Supp. 2d at 597-98 ("Here ... Plaintiff's defensive invocation of principles of estoppel rests upon a separate promise–namely, that Defendant would provide a written contract memorializing the parties' oral agreement); see also, Fairway Machinery Sales Co., 40 Mich. App. at 271 (Three weeks after oral acceptance, defendant assures the plaintiff that a written award of the bid is forthcoming.) Here, the alleged promises made by CVS occurred at the November 20, 2007 meeting, specifically that CVS would purchase 50 unit packages of the Fast Trax line of products, continue to order the products to replenish inventory, and once SFD was listed as an approved vendor, CVS would issue written purchase orders for the Fast Trax line of products.

Even if SFD's promissory estoppel claim is not barred by the statute of frauds, SFD cannot establish the existence of an actual, clear and definite promise. To succeed on a claim of promissory estoppel, plaintiff must establish: (1) a promise, (2) that the promisor should reasonably expect to induce action or forbearance on the part of the promisee, (3) that in fact induces such action or forbearance, and (4) injustice can be avoided only by performance of the promise. See Gore v. Flagstar Bank, FSB, 474 Mich. 1075, 1079; 711 N.W. 2d 330 (2006). Promissory estoppel requires an actual, clear, and definite promise. State Bank of Standish v. Curry, 442 Mich. 76, 84-85; 500 N.W. 2d 104 (1993). "[I]f the

expression is made in the course of preliminary negotiations when material terms of the agreement are lacking, the degree of certainty necessary in a promise is absent." Id.

While Bruseloff maintains that Kelly made certain promises to purchase the Fast Trax line of products, his behavior after this alleged November 20, 2007 promise suggests otherwise, specifically, his February 11, 2008 letter to Kelly wherein he enclosed samples of the Fast Trax products, a photograph of a display tray, and indicated his goal was to "team up with CVS for 52-week business." Further, Settler's deposition testimony supports Kelly's denial of making any promises to purchase SFD's Fast Trax products. Accordingly, this claim is dismissed.

C. Trade Dress Infringement

SFD alleges that CVS violated the Lanham Act by copying its Fast Trax line of products's trade dress packaging. CVS argues that SFD cannot establish acquired distinctiveness or 'secondary meaning' whereby the consuming public associates the semi-cylindrical package and the font used on the packaging with SFD as the source of the products. SFD counters that CVS is incorrect in asserting that product packaging trade dress requires a showing of acquired distinctiveness.

In Wal-Mart Stores v. Samara Bros., 529 U.S. 205, 210-12 (2001), the court held that, unlike product packaging trade dress, product design trade dress, is never inherently distinctive. Therefore, CVS is incorrect in arguing that SFD's product packaging trade dress claim requires a showing of acquired distinctiveness. Rather, SFD can show its

product packaging trade dress is either inherently distinctive or has acquired distinctiveness:

> First, a mark is inherently distinctive if its intrinsic nature serves to identify a particular source. In the context of word marks, courts have applied the now-classic test originally formulated by Judge Friendly, in which word marks that are "arbitrary" ("Camel" cigarettes), "fanciful" ("Kodak" film), or "suggestive" ("Tide" laundry detergent) are held to be inherently distinctive. Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.

Id. at 210-11 (internal citations omitted). While SFD may establish its claim of trade dress infringement by showing inherent distinctiveness, it has not presented the court with any evidence suggesting that the Fast Trax product packaging's "intrinsic nature serves to identify" SFD as its source. Therefore, SFD must establish that Fast Trax's product packaging trade dress has developed secondary meaning.

SFD argues that it can show secondary meaning because of the fact that CVS copied SFD's product packaging, which is strong evidence of secondary meaning. See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F. 3d 619, 639 (6th Cir. 2002) ("This court has long held that evidence of intentional copying shows the strong secondary meaning of a product because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.") CVS argues that SFD had only been using the semi-cylindrical blister packaging and font since the end of 2007 and the last sales of the Fast Trax products were in mid-2008. SFD has not

-10-

presented any evidence of how many of the Fast Trax products were sold with this new packaging, but the short time frame that this packaging was used can not have achieved the requisite acquired distinctiveness whereby the public would associate this product packaging trade dress with SFD as the single source of the products. Further, SFD has failed to provide any direct or circumstantial (with consumer surveys) evidence that the primary significance of the semi-cylindrical blister packaging and font in the minds of the public was that SFD was the producer of these products.

### D. Design Patent Infringement

35 U.S.C. § 171 provides that a design patent may be issued for "any new, original and ornamental design for an article of manufacture." Once a design patent is issued by the USPTO, there is a strong presumption that the patent is valid. See 35 U.S.C. § 282; L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F. 2d 1117, 1123 (Fed. Cir. 1993). In order for a design patent to be valid, it must "disclose a design that is new, original and ornamental, unanticipated and inventive in character, and beyond the skill of the ordinary designer or draftsman[,][a] design patent cannot be obtained to protect a mechanical function or cover an article whose configuration affects its utility alone." Kwik-Site Corp. v. Clear View Mfg. Co., 758 F. 2d 167, 171 (6th Cir. 1985).

In addition to being novel, a design patent must not be obvious to one of ordinary skill in the art. See L.A. Gear, 988 F. 2d at 1123-24. Obviousness is a question of law based upon (1) the scope and content of the prior art; (2) the level of ordinary skill in the

art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. See Crocs, Inc. v. International Trade Commission, 598 F. 3d 1294, 1308 (Fed. Cir. 2010). Further, if a design patent "is primarily functional rather than ornamental, the patent is invalid." Power Controls Corp. v. Hybrinetics, Inc., 806 F. 2d 234, 238 (Fed. Cir. 1986).

CVS argues that SFD's design patent for the electrical connector is invalid because Bruseloff testified that the design includes two elements of novelty; the three "frowns," comprising the "flex-grip" and the semi-recessed retractor buttons. Bruseloff testified that the three frowns creating the "flex-grip" are functional, so that user's fingers don't slide off when inserting or removing the connector. The retractor buttons are located on the side of the connector and when depressed, they allow the connector to be disengaged. CVS argues that the partially recessed retractor buttons are not novel, prior design patent art (Lok Patent) features the same design of the partially recessed retractor buttons on a cable connector.

CVS misapplies the law on functionality because in order to render a design patent invalid, the design must be dictated by function. PHG Techs., LLC v. St. John Cos., 469 F. 3d 1361, 1366 (Fed. Cir. 2006). "The determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance." Id. The court should consider:

> [W]hether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article;

-12-

whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

Id. The "flex-grip" consisting of three frown shaped lines could have been designed in an infinite number of ways and still would have served the same purpose. In any event, that the connector incorporates one feature in its design that is functional is not grounds for invalidity of the entire patent. See Keystone Retaining Wall Sys., Inc. v. Westrock., 997 F. 2d 1444, 1450 (Fed. Cir. 1993) ("A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent.")

As to CVS's argument concerning the Lok Patent, this prior art contains partially recessed buttons, however the buttons are designed entirely differently than those found in SFD's patented design. The Lok Patent does not contain a "flex-grip" nor a horseshoe shaped recessed area on the face of its connector or rectangular depressions at each corner of the connector's face. See Defs.' Mot. for Summ. J., Ex. 9; Plf.'s Resp., Ex. B. This prior art cannot support a finding of obviousness because it does not include all of the elements of SFD's patented design. See L.A. Gear, 988 F. 2d at 1124. Based on the foregoing, SFD has failed to rebut the presumption of invalidity of SFD's design patent by clear and convincing evidence and this claim shall proceed to trial. Id. at 1123.

IV. Conclusion

-13-

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's trade dress infringement (Count II) and promissory estoppel (Count III) claims are dismissed.

SO ORDERED.

Dated: March 22, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 22, 2012, by electronic and/or ordinary mail and to Michael Boorman at 303 Peachtree St NE, One Peachtree Center #5300, Atlanta GA 30308-3201.

S/Josephine Chaffee
Deputy Clerk

---